UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DON KARL JURAVIN,**

        **Plaintiff,**

**v.**                                                  Case No:  **6:24-cv-1630-GAP-NWH**

**KENNETH BOBBY JONES and
GORDON WOODRUFF,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

This cause comes before the Court on Defendants Kenneth Bobby Jones ("Mr. Jones") and Gordon Woodruff's ("Mr. Woodruff"; collectively, "Defendants") Motion to Dismiss, Strike, or for More Definite Statement (Doc. 18). Plaintiff Don Karl Juravin ("Plaintiff"), who is proceeding *pro se*, has filed a Response in opposition (Doc. 25); thus, the Motion is ripe for review. For the reasons set forth below, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

## BACKGROUND[1]

This action arises from a failed real estate transaction. (*See* Doc. 1). In early July 2024, Plaintiff—along with his wife Anna Juravin ("Mrs. Juravin")—and Mr. Jones

---

[1] This account of the facts is taken from Plaintiff's Complaint and Exhibits (Doc. 1), the factual allegations of which the Court accepts as true when considering Defendants' Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

executed a Memorandum of Understanding ("MOU") regarding the sale of a property owned by Plaintiff and Mrs. Juravin. (Doc. 1-1). The MOU stated, in pertinent part:

> Prior to the inspection period described below, the Parties intend to enter into a definitive Asset Purchase Agreement (the "APA") which will be based on the terms contained in this MOU. The Parties shall work diligently in good faith to complete the APA within ninety (90) days following the execution of this MOU.

> 1. **Purchase and Sale**. The Buyer wishes to buy, and Sellers wish to sell Lake County parcel 12-22-26-0500-000-27000 . . . located at 15118 Pendio, Bella Collina 34756, Florida, including the Club membership belonging to lot 270 ("House") and the "Furniture" (collectively the "Assets") of the Sellers.

> 2. **Purchase Price.** The purchase price for the Assets shall be Two Million Dollars ($2,000,000), payable in full at closing ("Closing"). . . .

> 4. **Closing.** The Closing of the transaction will be on a date (the "Closing Date") to be negotiated by the Parties. The Parties will work to set the Closing Date as soon as possible after execution of the APA.

> 5. **Earnest Money Deposit.** Upon execution of the MOU, the Buyer shall make an earnest money deposit ("Earnest Money") of One Hundred & Fifty Thousand Dollars ($150,000) in the trust account of Buyer's attorney who will provide proof of such deposit to the Seller. The Earnest Money shall be applied to the purchase price for the assets at Closing. If the transaction does not close for any reason other than breach by the Buyer after a Closing Date has been agreed upon by the Seller and the Buyer, the Earnest Money will be refunded to the Buyer. . . .

> 7. **Due Diligence; Condition of the House**. The Buyer shall have a period of 30 days following execution of the APA (the "Inspection Period") within which to conduct an inspection of any and all the Assets. . . . During the Inspection Period and thereafter until a Closing Date is set, provisions are made for payment of liens and encumbrances, and all necessary court approvals have been obtained, the Buyer shall have the right to terminate this transaction and recover its Earnest Money. . . .

8. **Legal Proceedings and Associated Costs.** The Sellers have disclosed that they and the Assets are subject of litigation/foreclosure/bankruptcy, and the Buyer acknowledges that sale of the Assets may be subject to one or more courts' approval(s) which could impact the Closing. The Parties agree that the subject sale must be approved by such Court(s); and it is the responsibility of the Sellers to obtain such approval(s). In the absence of such approval(s), this Agreement shall be void.

(*Id.*).

Per the parties' agreement, Mr. Jones provided $150,000.00 to Mr. Woodruff to hold as an earnest money deposit. (Doc. 1, ¶ 8; *see* Doc. 1-1 at 5-6). Thereafter, Plaintiff abandoned all other options to sell the property. (Doc. 1, ¶ 9). Ultimately, however, Mr. Jones did not go through with the purchase, and Mr. Woodruff did not release the $150,000.00 that he held in escrow to Plaintiff. (*Id.*, ¶¶ 12, 14-16).

Plaintiff now sues Mr. Jones for breach of contract (Count I) and fraudulent misrepresentation (Count IV), Mr. Woodruff for breach of fiduciary duty (Count II), and both Defendants for unjust enrichment (Count III), intentional infliction of emotional distress (Count V), and negligence (Counts VI and VII). (Doc. 1) In the instant Motion, Defendants move to dismiss Plaintiff's Complaint with prejudice. (Doc. 18).

## LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's complaint. To survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff

3

alleges enough facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, a district court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). Additionally, the district court must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and cross "the line from conceivable to plausible." *Ashcroft*, 556 U.S. at 680. The mere recitation of the elements of a claim is not enough, and the district court need not give any credence to legal conclusions that are unsupported by sufficient factual material. *Id.* at 678.

## DISCUSSION

As an initial matter, the undersigned recognizes that Plaintiff's Complaint is due to be stricken because it fails to comply with Federal Rule of Civil Procedure 11(a) considering that Plaintiff failed to sign it. (Doc. 1 at 18). Separately, the undersigned concludes that each of Plaintiff's claims is due to be dismissed pursuant to Rule 12(b)(6).

## I.    Count I – Breach of Contract

Plaintiff's first claim is for breach of contract. (Doc. 1, ¶¶ 18-22). Plaintiff alleges that he and Mr. Jones "entered into a valid and enforceable Agreement for the sale of the Property," but Mr. Jones "breached the Agreement by failing to proceed with the purchase of the Property as agreed, failing to release the escrow funds, and not acting in good faith." (*Id.*, ¶¶ 19, 21).

In their Motion to Dismiss, Defendants argue that Plaintiff's breach of contract claim is due to be dismissed because the MOU constitutes an unenforceable agreement to agree regarding the sale of the subject property. (Doc. 18 at 8-11). Plaintiff, on the other hand, asserts that MOU includes the necessary "essential terms: the parties, property, purchase price, deposit amount, and performance conditions." (Doc. 25 at 3). Plaintiff's argument ignores the threshold issue raised by Defendants.

The Eleventh Circuit discussed this threshold issue in *Doll v. Grand Union Co.*, 925 F.2d 1363 (11th Cir. 1991), explaining:

> Every possible provision of a contemplated [contract] may be discussed and agreed upon, but unless the parties intend that these discussions be binding, no contract has been formed. When the parties express their intention to be bound and they specify the basic terms of the [contract], the courts will enforce the contract . . . to avoid frustrating the parties' original intent. When such indications of intent are absent or are explicitly disavowed, however, the justification for enforcing the proposed [contract] is wholly absent. The court does not address the terms of the proposed [contract] until it has satisfied itself that the parties did indeed intend to be bound.

*Id.* at 1368–69.

Whether the parties executed a binding contract or an unenforceable agreement to agree turns on the language of the MOU and the surrounding circumstances. *White Const. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1320 (M.D. Fla. 2009) (citing *Midtown Realty, Inc. v. Hussain,* 712 So. 2d 1249, 1251–52 (Fla. 3d DCA 1998)). The plain language of the MOU indicates that, although the parties were interested in facilitating the sale of the subject property, they did not intend to be bound by the MOU to the extent it related to the sale of Plaintiff's property.

Specifically, the MOU states that "the Parties *intend* to enter into a definitive Asset Purchase Agreement," based on the terms contained in the MOU, and that "Buyer *wishes* to buy, and Sellers *wish* to sell" the subject property. (Doc. 1-1 at 1 (emphasis added)). This language merely "expresses an agreement to agree" with regard to the sale of the subject property, "which cannot constitute an enforceable contract under Florida law" for the sale of Plaintiff's house. *Baron v. Acasta Cap.*, No. 16-25118-Scola, 2017 WL 3084416, at *4 (S.D. Fla. July 19, 2017); *Spanish Broad. Sys. of Fla., Inc., v. Alfonso,* 689 So. 2d 1092, 1094 (Fla. 3d DCA 1997). Because Plaintiff fails to allege the existence of a contract for the sale of his property, his breach of contract claim is untenable.[2] *Baron*, 2017 WL 3084416, at *5 (granting motion to dismiss based on an unenforceable agreement to agree).

---

[2] Even assuming *arguendo* that the MOU constitutes an enforceable contract, Plaintiff has failed to sufficiently allege that Mr. Jones breached the MOU.

6

## II.    Count II – Breach of Fiduciary Duty

Although Plaintiff labelled Count II as a breach of contract claim against Mr. Woodruff in his Complaint, he makes clear in his Response that Count II is instead a claim for breach of fiduciary duty. "Under Florida law, the elements of a claim for breach of a fiduciary duty are 1) the existence of a fiduciary duty; 2) a breach of that duty; and 3) damages proximately caused by the breach." *Id.*; *see Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).

"An escrow agent has a fiduciary duty to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property." *All Purpose Title, LLC v. Knobloch*, 397 So. 3d 85, 88 (Fla. 4th DCA 2024) (citation and internal quotation marks omitted). "Since the escrow holder has no personal interest in the escrow deposit other than carrying out his or her obligations under the escrow agreement, he or she must be impartial in his or her dealings with both the depositor and the beneficiary." *Id.* (citation and internal quotation marks omitted).

"Florida law has established that parties may limit escrow agents' responsibilities through contract." *Id.* at 89 (citation and internal quotation marks omitted). "Ultimately, the language of the escrow agreement is the primary consideration in determining the nature and extent of the agency." *Id.* (citation and internal quotation marks omitted).

In his Complaint, Plaintiff alleges that "Defendant Woodruff, acting as escrow agent, had a duty to release the $150,000.00 escrow to Plaintiff upon the breach of the Agreement by Defendant Jones" and that "Defendant Woodruff breached this duty

by failing to release the escrow funds despite repeated demands from Plaintiff." (Doc. 1, ¶¶ 24-25). However, Plaintiff's claim for breach of fiduciary duty fails based on the undersigned's conclusion that the parties executed an unenforceable agreement to agree. Moreover, even assuming *arguendo* that MOU is enforceable, the MOU specifically states: "If the transaction does not close for *any reason* other than breach by the Buyer *after a Closing Date has been agreed upon* by the Seller and the Buyer, the Earnest Money will be refunded to the Buyer." (Doc. 1-1 at 1 (emphasis added)). Simply put, Plaintiff cannot state a claim for breach of fiduciary duty because Plaintiff is not entitled to the escrow funds.

## III.    Count III – Unjust Enrichment

To state a claim for unjust enrichment under Florida law, a plaintiff must allege: (1) "a benefit conferred upon the defendant by the plaintiff," (2) "appreciation by the defendant of such benefit," and (3) "acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 712 (Fla. 2d DCA 1988).

Defendants seek dismissal of Plaintiff's unjust enrichment claim based on the fact that Plaintiff has not alleged that he conferred any benefit on either Mr. Jones or Mr. Woodruff. (Doc. 18 at 12-13). Indeed, Plaintiff neither alleged that he conferred a benefit on Defendants nor addressed any other elements of this cause of action in his Complaint. (*See* Doc. 1; *see also* Doc. 25 at 4). Thus, Plaintiff fails to state a claim for unjust enrichment.

## IV.    Count IV – Fraudulent Misrepresentation

Plaintiff also fails to state a claim for fraud. Fraud claims are governed by the more rigorous pleading standard set forth in Rule 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* "To meet this standard, the Complaint needs to identify: the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." *Baron*, 2017 WL 3084416, at *6 (citing *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). Plaintiff's vague allegation that Mr. Jones "made false representations to Plaintiff regarding his intent and ability to purchase the Property and fulfill the terms of the Agreement" does not suffice. (*See* Doc. 1, ¶ 32).

## V.    Count V – Intentional Infliction of Emotional Distress ("IIED")

To state a claim for IIED under Florida law, a plaintiff must allege "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990); *see Baron*, 2017 WL 3084416, at *7. "Outrageous conduct is conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hart*, 894 F.2d

at 1548 (citation and internal quotation marks omitted). "A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently 'outrageous.' " *Baron*, 2017 WL 3084416, at *7.

In his Complaint, Plaintiff alleges that "Defendants knew or should have known that their actions, including failing to honor the Agreement and withholding the escrow funds, would cause Plaintiff severe emotional distress." (Doc. 1, ¶ 36). Ultimately, however, this "run-of-the-mill business dispute simply cannot rise to the level of outrageousness required under Florida law." *Baron*, 2017 WL 3084416, at *8. Therefore, Plaintiff cannot state a claim for IIED.

## VI.    Counts VI and VII – Negligence

Plaintiff asserts claims for negligence against both Mr. Jones and Mr. Woodruff. (*See* Doc. 1, ¶¶ 39-48). Plaintiff alleges that Mr. Jones "owed a duty of care to the Plaintiff to act in good faith and fulfill the terms of the Agreement" and that he breached that duty "by failing to proceed with the purchase of the Property and by failing to release the escrow funds, despite knowing the financial situation and the urgency required by the Agreement." (*Id.*, ¶¶ 40-41). Plaintiff also states that Mr. Woodruff, "acting as escrow agent, owed a duty of care to the Plaintiff to manage the escrow funds responsibly and to release the funds upon breach of the Agreement by Defendant Jones"; however, Mr. Woodruff "breached this duty by failing to release

the escrow funds despite knowing the financial urgency and the Plaintiff's reliance on those funds." (*Id.*, ¶¶ 45-46).

To state a negligence claim, a plaintiff must allege "(1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damages." *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1299 (M.D. Fla. 2014) (citing *Williams v. Davis,* 974 So. 2d 1052, 1056 (Fla. 2007)).

With regard to Count VI, Plaintiff has failed to allege that Mr. Jones owed him a duty. "Duty is a matter of law that is to be determined by the Court." *Janis v. Pratt & Whitney Can., Inc.*, 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005) (citing *McCain v. Fla. Power Corp.,* 593 So. 2d 500, 502 (Fla. 1992)). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* (citing *McCain*, 593 So. 2d at 502). "A legal duty may arise from legislation, case law, or the general facts of the case." *Id.* (citing *McCain*, 593 So. 2d at 503 n.2). Plaintiff's conclusory allegation that Mr. Jones owed him a duty "to act in good faith and fulfill the terms of the Agreement" does not plead a cognizable legal duty. *See Lezcano v. Bank of Am. NA*, No. 6:23-cv-674-CEM-LHP, 2023 WL 10947178, at *3 (M.D. Fla. Nov. 13, 2023) ("[T]his type of conclusory recital of the duty element is not enough when confronted with a properly supported Rule 12(b)(6) motion.") (citing *Iqbal*, 556 U.S. at 678).

Turning to Mr. Woodruff, Plaintiff's negligence claim fails for the same reasons as his breach of fiduciary duty claim. Mr. Woodruff did not breach his duty as an escrow agent because the MOU between Mr. Juravin and Mr. Jones constitutes an unenforceable agreement to agree, and even assuming *arguendo* that the MOU is enforceable, Mr. Juravin was not entitled to the escrow funds under the terms of the MOU. Thus, Plaintiff has not stated a negligence claim against either Defendant.

## CONCLUSION

In short, the undersigned concludes that Plaintiff's Complaint (Doc. 1) is due to be dismissed without prejudice.[3] Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that the Court **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss, Strike, or for More Definite Statement (Doc. 18), as follows:

1. **GRANT** the Motion to the extent that Defendants seek dismissal of Plaintiff's Complaint (Doc. 1) without prejudice;

2. **DENY** the Motion in all other respects; and

---

[3] The undersigned recognizes that Defendants seek dismissal of Plaintiff's Complaint with prejudice, whereas Plaintiff requests leave to file an amended complaint under Rule 15(a)(2) in his Response. (*See* Doc. 25 at 6). While the undersigned is not inclined to recommend dismissal of Plaintiff's Complaint with prejudice at this stage in the litigation, Plaintiff's request is improper.

A request for affirmative relief, including a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. *See* Fed. R. Civ. P. 7(b); *see also Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1236 (11th Cir. 2022) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)). Plaintiff's request is also due to be denied because it does not comply with Middle District of Florida Local Rules 3.01(a) and 3.01(g) and fails to satisfy the requirement that a "motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). If Plaintiff desires to pursue such relief, he should file an appropriate motion in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

3. **DISMISS** Plaintiff's Complaint (Doc. 1).

## <u>NOTICE TO PARTIES</u>

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on August 1, 2025.

NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE